IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KARI SIMONSEN,

        Plaintiff,

vs.

THURSTON COUNTY SCHOOL
DISTRICT 87-0013 (doing business as
WALTHILL PUBLIC SCHOOLS), and
KIRK AHRENDS, in his individual
and official capacities,

        Defendants.

4:22-CV-3179

MEMORANDUM AND ORDER

The plaintiff, Kari Simonsen, alleges her employer, Thurston County School District 87-0013, doing business as Walthill Public Schools (WPS), and Kirk Ahrends, the Superintendent of WPS, violated her rights under the First Amendment, and violated her statutory rights by engaging in discriminatory and retaliatory conduct. This matter is before the Court on the defendants' motion to dismiss (filing 24), Simonsen's motion for leave to amend the complaint (filing 30), and Simonsen's motion for leave to withdraw filing 30 (filing 35). For the reasons outlined below, the motion to dismiss will be granted in part, and in part denied. The motion for leave to withdraw filing 30 will be granted.

BACKGROUND

The plaintiff, Kari Simonsen, has been employed by WPS since 2005 as a general education teacher. Filing 23 at 2. The defendant, Kirk Ahrends, was the Superintendent of the district at all relevant times. Filing 23 at 2. According to Simonsen, nearly 96 percent of students in the district are Native

American, and a significant majority of the students have disabilities that require individualized education programs (IEPs). Filing 23 at 3. IEPs are written plans used to ensure that students with disabilities receive legally-mandated educational services, and both state and federal law require strict compliance with the plans. Filing 23 at 3. The district allegedly received taxpayer funding to provide educational services outlined in students IEPs. Filing 23 at 3.

Simonsen claims that, in her role as an educator, she was required to assist in formulating and ensuring compliance with student IEPs. Filing 23 at 3. And the events leading to this action allegedly involve, in part, her repeated opposition to the district's non-compliance with student IEPs over the course of her seventeen years of employment. Filing 23 at 3.

These concerns appear to have come to a head in August 2017. Around that time, Kerri Mohnsen, a speech pathologist, was placed at the district to provide special education services. Filing 23 at 4. Soon after her arrival, Ms. Mohnsen allegedly "discovered that [the district] was failing to provide statutorily mandated services and education to special education students, most of whom were Native American." Filing 23 at 4. Around the same time, Simonsen allegedly renewed her similar complaints to district administrators. Filing 23 at 4.

Dissatisfied with the district's response (or the alleged lack thereof), Mohnsen filed complaints with the Nebraska Department of Education. Filing 23 at 4. During the Department's investigation of Mohnsen's complaints, Simonsen was interviewed, and she claims she provided critical information that (1) corroborated Mohnsen's "reported law violations related to [the district's] failure to deliver mandatory educational services to disabled Native American students, and (2) described the "egregious harassment that Ms.

Mohnsen suffered at the hands of [district] administrators and employees" as a result of filing complaints. Filing 23 at 5-6.

In a March 2018 report, the Department of Education's investigation confirmed that the district was failing—in multiple ways—to comply with student IEPs and related administrative requirements of state and federal special education law. Filing 23 at 6. As a result, the district was placed on probation and directed to take remedial actions to cure deficiencies. Filing 23 at 6. Simonsen also claims that the investigation resulted in the then-Superintendent, Edward Stansberry, resigning his position and having his professional license suspended for a year. Filing 23 at 6. He was replaced by Ahrends for the 2018-19 school year. Filing 23 at 7.

In June 2019, Mohnsen filed a lawsuit against the district and Stansberry, alleging discrimination and retaliation under various state and federal laws. Filing 23 at 7. Simonsen was scheduled to provide deposition testimony in that case, and she claims that before doing so, "Ahrends sought to intimidate and coerce [her] sworn deposition testimony by falsely telling [her] that her testimony would determine whether [the district] had to remain on the 2018 [Nebraska Department of Education] remedial/corrective action plan." Filing 23 at 6. Still, she testified to the following on December 2, 2020:

- The district routinely failed to deliver special education services;

- The district's Director of Education repeatedly stated that compliance with IEPs were suggestions, not mandatory;

- During the course of her employment she repeatedly reported to district administrators that students were being denied the education required by their IEPs, but her reports were ignored;

3

- District administrators intimidated her and sought to deter her from making complaints after she reported violations of IEPs;

- One educator was failing to deliver mandated education services to special education students; and

- District administrators and staff became overtly hostile and aggressive toward Mohnsen after she reported the district's failure to comply with IEPs.

Filing 23 at 8-9. And while Mohnsen's lawsuit was pending, Simonsen alleges that Ahrends often discussed the matter with disgust and anger, including at staff and school board meetings. Filing 23 at 10.

On August 31, 2021, the Mohnsen lawsuit settled out of court. Filing 23 at 10. That same day, Ahrends suspended Simonsen from her employment despite the fact that she had already entered a written teaching contact for the 2021-22 academic year. Filing 23 at 11. Ahrends allegedly accused Simonsen of attempting to terminate another employee, and the letter he issued that day explained that she would be temporarily relieved of her duties until an investigation could be completed. Filing 23 at 12. The letter told Simonsen to immediately return her keys and any other district-issued property. Filing 23 at 11. It also said that Simonsen could not participate in school activities, nor was she to return to the school (during or after working hours) without making prior arrangements with Ahrends. Filing 23 at 11. And despite the timeline outlined in the letter, Ahrends allegedly told Simonsen on the day of her suspension that "her teaching contract would not be renewed for the 2022-23 school year." Filing 23 at 11.

According to Simonsen, Ahrends' accusations were pretextual, and her suspension was instead a discriminatory and retaliatory action motivated by her complaints and cooperation in the Department of Education investigation

4

and Mohnsen lawsuit. Filing 23 at 12. In fact, Simonsen claims that just days before her suspension, she told both the principal and Ahrends that "she would continue to report violation of law and/or failure to deliver special education services to disabled students if she observed the same." Filing 23 at 12. Additionally, the employee she was accused of trying to terminate had been identified by the Department's report as failing to deliver mandatory special education services to disabled students. Filing 23 at 12. And in the days preceding her suspension, Simonsen alleges that she told other employees that she would continue to report district staff who failed to deliver these services. Filing 23 at 12. Simonsen maintains that none of these statements constituted improper conduct. Filing 23 at 12.

Near the end of November 2021, Simonsen filed six complaints with the Department of Education against Ahrends and other district administrators and employees. Filing 23 at 13. In addition to outlining the defendants' conduct towards her, Simonsen also allegedly reported continuing special education violations by the district and unlawful retaliation against third parties. Filing 23 at 13. In December 2021, the district began an internal investigation into Simonsen's claims. Filing 23 at 15. While this investigation was ongoing, Simonsen filed charges of discrimination and retaliation with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission. Filing 23 at 16. Though the district's internal investigation concluded in April 2022, Simonsen was not reinstated to finish out the 2021-2022 school year. Filing 23 at 16. Still, on April 25, 2022, Simonsen allegedly accepted a teaching contract with the district for the 2022-23 school year. Filing 23 at 17. On May 2 and May 11, 2022, Simonsen filed amended charges with the NEOC and EEOC detailing the district's continuing acts of discrimination and retaliation. Filing 23 at 16.

When Simonsen's teaching contract was set to commence on August 8, 2022, the defendants did not recall Simonsen from her suspension. Filing 23 at 17. As a result, Simonsen filed this case on August 25, 2022, alleging various discrimination and retaliation claims under the First Amendment, Americans with Disabilities Act, the Rehabilitation Act of 1973, 42 U.S.C. § 1981, Title VII, and the Nebraska Fair Employment Practices Act. Filing 23 at 20-23. Simonsen's suspension—along with her ban on entering the school premises— allegedly remained in effect for the entire 2022-23 school year. Filing 23 at 17. And Ahrends allegedly failed to respond to multiple communications from Simonsen during this time inquiring about when she could return to work. Filing 23 at 17. Simonsen again entered a contract for the 2023-2024 school year, but was told by the district's attorney in April 2023 that the district planned to maintain the "status quo" and continue her suspension for the "foreseeable future." Filing 23 at 18. Before the Court is the defendants' motion to dismiss Simonsen's complaint for failure to state a claim, Simonsen's motion for leave to file an amended complaint, and her subsequent motion to withdraw that request.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the

factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## DISCUSSION

Simonsen seeks redress for alleged First Amendment violations under 42 U.S.C. § 1983 as well as alleged retaliation and discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791; 42 U.S.C. § 1981; and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq*.

### 1. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Under Nebraska law, a written charge of violating the Nebraska Fair Employment Practice Act must be filed within 300 days of the occurrence. Neb. Rev. Stat. § 48-1118(2). The deadline for filing a lawsuit is 90 days after notice of the last action the NEOC will take on the charge. Neb. Rev. Stat. § 48-1120.01; see *Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000 (8th Cir. 2013).

Federal law is similar: the charge must be filed with the EEOC (or, in this case, its state partner) within 180 days after the alleged unlawful employment practice, see 42 U.S.C. § 2000e-5(e)(1), and a civil action may be pursued within 90 days after receiving a right-to-sue letter, see § 2000e-5(f)(1); *Williams v. Thomson Corp.*, 383 F.3d 789, 790 (8th Cir. 2004). Generally, under federal law, a plaintiff is required to exhaust administrative remedies before filing a lawsuit based on an unlawful employment practice. *See, e.g.*, *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021); *Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 534 (8th Cir. 2018); *see also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (requiring a timely charge with the EEOC or NEOC before bringing suit for a violation of Title VII or the ADA).

The defendants argue Simonsen has failed to exhaust her administrative remedies so certain claims brought under the ADA, Title VIII, and the NFEPA are barred. The amended complaint contains allegations that Simonsen and disabled Native American students were deprived of constitutional and statutory rights as far back as 2017. The defendants assert these allegations, as well as Simonsen's allegations that she was intimidated before a December 2020 deposition, are time-barred because the earliest date Simonsen filed charges with the NEOC or EEOC was February 7, 2022.

Simonsen alleges that she filed multiple NEOC and EEOC complaints, that the EEOC issued a determination and notice of rights in 2023, and, at the time of the amended complaint, an NEOC charge was pending before the state agency. Filing 23 at 18. She alleges her suspension constitutes an unlawful employment action. She filed her first charges with the NEOC or EEOC on February 7, 2022, within 180 days of the suspension. Thus, her claims that her suspension was due to retaliation or discrimination were timely filed.

Similarly, Simonsen alleges she filed additional charges with the EEOC and NEOC on May 2, 2022, May 11, 2022, and January 31, 2023 alleging continuing violations of the laws, as well as the defendants' failure to reinstate Simonsen to the classroom on August 8, 2022 in accordance with the 2022-2023 teaching contract. Filing 23 at 17. These charges were timely filed.

However, there is no allegation that Simonsen filed charges related to any actions occurring before her suspension. It is unclear what specific charges were alleged in the February 7, 2022 EEOC and NEOC filings, but any claims for statutory deprivation of Simonsen's rights under the ADA, Title VII, and NFEPA, occurring more than 300 days (under Nebraska law) or 180 days (under federal law) prior to February 7, 2022 would be time-barred.[1]

### 2. FIRST AMENDMENT CLAIMS (COUNTS I AND II)

#### (a) Individual Capacity Claims Against Ahrends

To state a First Amendment retaliation claim, a public employee must allege that (1) she engaged in activity protected by the First Amendment; (2)

---

[1] Simonsen appears to acknowledge the time limit, arguing "for purposes of the claims requiring exhaustion of administrative remedies Plaintiff timely filed administrative actions alleging violations of the NFEPA, the ADA, and Title VII for all events which transpired 300 days prior to February 7, 2022." Filing 28 at 4.

the defendant took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action. *Lyons v. Vaught,* 781 F.3d 958, 961 (8th Cir. 2015).

The defendants argue that Simonsen's claim is deficient for many reasons, including that Simonsen failed to plausibly allege a claim for retaliation. Additionally, the defendants argue that even if Simonsen stated a First Amendment retaliation claim, Ahrends has qualified immunity. Filing 25 at 14. The Court will address these arguments in turn.

### (i) Speech

The defendants argue that Simonsen's statements in all instances were made pursuant to her job duties and therefore cannot be considered protected speech for purposes of a First Amendment claim. Filing 25 at 16. Simonsen argues that her speech was not part of her job duties and, though some of her statements involved personal matters, her speech was primarily motivated by a matter of public concern—the district's alleged failure to educate students in the special education program and its misappropriation of public monies allotted to the program. Filing 28 at 15.

When public employees make statements pursuant to their official duties, they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Lyons v. Vaught,* 875 F.3d 1168, 1173 (8th Cir. 2017). To determine if speech is made pursuant to an employee's official duties, the critical question is whether "the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Stated another way, "speech is pursuant to an employee's duties if it is part-and-parcel of the employee's concerns about his ability to properly execute his

10

duties." *Id.* at 1174 (citations omitted). Conversely, public employees' speech is protected when they are speaking as a citizen on a matter of public concern. *Id.* Speech on matters of public concern means speech "relating to any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146 (1983).

Whether an employee's speech addresses a matter of public concern must be determined by "the content, form, and context of a given statement, as revealed by the whole record." *Hemminghaus v. Missouri,* 756 F.3d 1100, 1111 (8th Cir. 2014). "The form and context are examined to determine whether the public employee speaks as a concerned citizen informing the public that the government is not properly discharging its duties, or merely as an employee speaking about internal practices relevant to only fellow employees." *Id.* at 1111; *see also Schilcher v. Univ. of Ark.,* 387 F.3d 959, 963 (8th Cir. 2004).

Simonsen alleged that she engaged in one or more protected activities and spoke out on matters of public concern.[2] Filing 23 at 19. The plaintiff's position required her to ensure the district fully complied with the disabled students' IEPs, confirm that each student received the requisite number of special education minutes, and provide additional support and assistance to disabled students. Filing 23 at 3. This type of speech is largely unprotected because it is part of what the employee is paid to do. *Janus v. AFSCME, Council 31,* 138 S. Ct. 2448, 2471 (2018).

However, Simonsen has alleged speech beyond the execution of her job duties, affecting the school as a whole, and reflecting on the school's educational policies and the use or misuse of public funds. Before her

---

[2] Although, as the defendants point out, it is unclear which "speech" Simonsen alleges as the basis for Count I, Simonsen's complaint alleges that she repeatedly spoke about matters of public concern.

suspension, Simonsen participated in a deposition taken in the Mohnsen case regarding violations allegedly occurring at the school, and the treatment of Mohnsen.

She also alleges she was punished for her speech in a manner that would chill a person of ordinary firmness from continuing to engage in the activity. She alleged several instances in which she engaged in speech critical of the way the school discharged, or failed to discharge, its duty to educate and provide mandated services for Native American and disabled students. She reported to WPS administrators, filed complaints with the Nebraska Department of Education, participated in investigations of WPS, and participated in a deposition as part of Ms. Mohnsen's lawsuit against the school. Simonsen was suspended from teaching, which she alleges was an adverse employment action, and that there was a retaliatory motivation for her suspension.

While the defendants allege, correctly, that there is ample federal precedent stating that placing an employee on paid administrative leave does not constitute an adverse employment action (See e.g. *Singletary v. Mo. Dep't of Corr.* 423 F.3d 886 (8th Cir. 2005), the circumstances here are distinguishable. In *Singletary,* the Eighth Circuit noted that the plaintiff was placed on administrative leave pending an investigation and was "promptly returned to his original position." *Id.* at 891. Here, Simonsen was told she would be returned to her position following an investigation, and despite the investigation having concluded, she has still not been restored to her position. She has alleged that she has been on administrative leave for <u>years.</u> See *Woolford v. City of Ashland, Missouri,* No. 2:20-CV-04105-NKL, 2020 WL 5118049, at *4 (W.D. Mo. Aug. 31, 2020) (suggesting that administrative leave

that is not followed by restoration to the original position may constitute an adverse employment action).

Additionally, she alleges that she has filed multiple EEOC and NEOC charges following her suspension, and despite the district's stated intention to "temporarily" relieve her of her duties pending a "thorough investigation," she has not been reinstated. Filing 23 at 11. Her suspension has continued despite the defendants renewing her contracts to teach in 2022-23 and 2023-24.

Simonsen's participation in the deposition and her NEOC and EEOC charges are considered protected speech and she has adequately alleged a claim under section 1983 that she was suspended and not reinstated in response to protected speech.

### (ii) Association

The Supreme Court has consistently recognized two types of protected associational rights: the right "to enter into and maintain certain intimate human relationships" and the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Royer ex rel. Est. of Royer v. City of Oak Grove*, 374 F.3d 685, 688 (8th Cir. 2004) (citing *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)).

The plaintiff alleges her First Amendment right to association was violated because she was prevented from association with students and other persons present at WPS during the 2021-22 school year. The defendants argue that Simonsen has not alleged sufficient facts to support a claim under the First Amendment, and that, even if she had, the suspension did not impose a significant burden upon Simonsen's right to association. The defendants rely on *Royer,* where the City barred an individual from a public building but did

13

not prevent him from associating with whomever he wants, wherever he wants, whenever he wants.

The plaintiff offers nothing to support her claim of a right to associate with "persons then and there present at WPS" or showing that preventing an individual from a public-school property subject to certain limitations is a violation of an individual's First Amendment right to free association. She does argue in her brief that the defendants have effectively precluded her from performing her duties as a union leader, but that is not the claim that she has pled. Count II will be dismissed for failure to state a claim.

### (b) Qualified Immunity

Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015)); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint." *Benson v. City of Lincoln*, No. 4:18-CV-3127, 2019 WL 1766159, at *8 (D. Neb. Apr. 22, 2019).

Determining the existence of qualified immunity at the Rule 12(b)(6) stage requires a two-part inquiry: (1) whether, on the face of the complaint, the facts alleged make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's

14

alleged misconduct. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009); *see also Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003). If no reasonable fact-finder could answer yes to both of these questions, the official is entitled to qualified immunity. *Nance*, 586 F.3d at 609. "Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009).

When engaging in the analysis of the existence of qualified immunity purely on the face of complaint in a motion-to-dismiss scenario, "[t]he balance favors the plaintiffs." *Benson*, 2019 WL 1766159, at *9; see also *Sanchez v. Bremer*, No. 8:11-CV-314, 2012 WL 1396879, at *7 (D. Neb. Apr. 23, 2012) (noting that determining qualified immunity at pre-summary-judgment stage is 'unlikely to be very specific, given that federal civil practice is based on notice pleading, where great specificity is not required, . . . and that there is no heightened pleading requirement for civil rights cases").

Public officials are entitled to qualified immunity when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Grantham v. Trickey*, 21 F.3d 289, 292-93 (8th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established for qualified immunity purposes if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Grantham*, 21 F.3d at 292-93.

"Clearly established" for purposes of qualified immunity" should not be defined at a high level of generality ... [but] must be particularized to the facts of the case." *Lyons v. Vaught,* 875 F.3d 1168, 1172 (8th Cir. 2017)(internal quotation and citation omitted.) That is, "a case directly on point" is not required in order to be "clearly established," but "existing precedent must have

placed the … constitutional question beyond debate" at the time the defendants acted. *Id.*

It has been clearly established since at least 1988 that public employers cannot retaliate against public employees for engaging in protected speech. *Grantham* at 294 (citing *Duckworth v. Ford,* 995 F.2d 858 (8th Cir. 1993)). Additionally, the Supreme Court has held that "absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of [her] right to speak on issues of public importance may not furnish the basis for [her] dismissal from public employment." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois,* 391 U.S. 563, 574, 88 S. Ct. 1731, 1738, 20 L. Ed. 2d 811 (1968). "Although *Pickering,* a 1968 decision, is the predominant Supreme Court opinion in this area, other long-standing cases clearly establishing school employees' right to free speech include *Mt. Healthy* [*City School Dist. Board of Educ. V. Doyle*], 429 U.S. 274 (1977), *Keyishian v. Board of Regents,* 385 U.S. 589 (1967), and *Shelton v. Tucker,* 364 U.S. 479 (1960)." *Lewis v. Harrison School Dist. No. 1,* 805 F.2d 310 (8th Cir. 1986).

As discussed above, on the face of the complaint, Simonsen sufficiently alleges a First Amendment violation, and the First Amendment right of a teacher to speak on a matter of public concern was clearly established at the time she was suspended. Simonsen alleged that the superintendent, Ahrends, took retaliatory action, suspending her and prohibiting her from entering the school and associating with students and staff following her alleged protected speech involving a matter of public concern.

Accepting these facts as true, a reasonable superintendent would have known that taking such action violated Simonsen's rights under the First Amendment. Although details at this stage are obviously lacking, Simonsen has pleaded sufficient facts to support all elements of a First Amendment

16

retaliation claim against defendants for the purposes of a Rule 12(b)(6) challenge. Because Ahrends' qualified immunity claim is based on a premise that no First Amendment violation occurred, the claims against Ahrends in his individual capacity will not be dismissed at this time. And, the motion to dismiss this claim on qualified immunity grounds will be denied without prejudice to raising the issue in a properly supported motion for summary judgment. See *Cronin v. Peterson*, 288 F.Supp.3d 970, 986 (D. Neb. 2018), *aff'd*, 982 F.3d 1187 (8th Cir. 2020).

### 3. VOLUNTARILY DISMISSED CLAIMS

In count III, Simonsen alleged the defendant discriminated against her due to her close association with disabled students, in violation of the Americans with Disabilities Amendments Act (ADA), the Rehabilitation Act of 1973, and the Nebraska Fair Employment Practices Act (NFEPA). Filing 23 at 21. In response to the defendant's motion to dismiss, Simonsen has voluntarily dismissed Count III of the amended complaint.

### 4. DISCRIMINATION

The plaintiff has alleged claims for discrimination by association under Title VII, 42 U.S.C. § 1981, and NFEPA against defendant WPS, and against defendant Ahrends under § 1981.

### (a) Title VII

Title VII prohibits employment discrimination against all races, so long as the discrimination is "because of such individual's race." *LaRocca v. Precison Motorcars, Inc.*, 45 F. Supp. 2d 762, 772 (D. Neb. 1999)*;* 42 U.S.C. § 2000e-2(a). In other words, "discriminatory employment practices based on an individual's association with people of a particular race or national origin are prohibited

17

under Title VII." *Id.* (citing *Reiter v. Center Consolidated School Dist.*, 618 F. Supp. 1458, 1460 (D. Colo. 1985)). Where a plaintiff claims discrimination based upon an interracial association, she alleges, by definition, that she has been discriminated against because of her race. *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986). The rationale is that the plaintiff was discriminated against on the basis of her race because her race was different from the race of the people she associated with. *Reiter*, 618 F. Supp. at 1460. Therefore, the focus of such a claim "should be whether the employee has been discriminated against and whether that discrimination was 'because of' the employee's race.'" *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 884 (7th Cir. 1998).

Simonsen has alleged WPS and Defendant Ahrends discriminated against her due to the protected activities she engaged in on behalf of Native American students and/or due to her close association with those students. The plaintiff has made no allegation of her race or that the school's discriminatory conduct was a result of her race being different than the Native American students she taught and advocated for. See, generally, *LaRocca* at 773. The plaintiff has not pled sufficient facts to state a claim for discrimination based on race under Title VII.

### (b) 42 U.S.C. § 1981

The defendants argue the Eighth Circuit has "repeatedly recognized the prohibition on freestanding § 1981 claims against state actors" therefore plaintiff's 1981 claims against the school district and against Ahrends in his official capacity must be dismissed for failure to state a claim. Filing 25 at 24-5. The plaintiff "admits this pleading failure and respectfully requests leave to add the § 1981 claims raised in Counts V-VII were brought pursuant to § 1983." Filing 28 at 22-3.

18

Even liberally construing Simonsen's complaint as including a claim for violation of § 1981 brought under § 1983, *see Lockridge v Board of Trustees of University of Arkansas,* 315 F.3d 1005 (8th Cir. 2003), this claim fails.

Section 1981 of the Civil Rights Act prohibits purposeful racial discrimination in almost every aspect of contract. *LaRocca v. Precison Motorcars, Inc.,* 45 F. Supp. 2d 762, 774 (D. Neb. 1999). The legal standard for a section 1981 case is identical to the standard in a Title VII case. *LaRocca,* 45 F. Supp. 2d at 777; *see, e.g., Kim v. Nash Finch Co.,* 123 F.3d 1046 (8th Cir. 1997); *Richmond v. Board of Regents of the University of Minnesota,* 957 F.2d 595 (8th Cir. 1992). A plaintiff is entitled to protections provided by section 1981 so long as she is able to show that she suffered purposeful racial discrimination at the hands of the defendant. The plaintiff has alleged the defendants engaged in discriminatory practices toward the students, but has not alleged that she was the subject of purposeful racial discrimination. See *LaRocca,* 45 F. Supp. 2d at 776. The plaintiff has not stated a claim for discrimination based on race under § 1981. The claims for discrimination under § 1981 in Counts V and VII will be dismissed as to both defendants, and her request to replead these claims is denied as futile.

### (c) NFEPA

As to Simonsen's "race by association" claim, *see* filing 28 at 22, Simonsen cites no support and makes no argument for a discrimination claim arising under NFEPA. Finding no statutory section or case law to support a claim for race discrimination by association under NFEPA, and taking into account that Simonsen voluntarily dismissed her disability by association claim under NFEPA, Simonsen's claim for race discrimination by association in Count V will be dismissed.

5. Retaliation

The ADA, Title VII, and the NFEPA each prohibit retaliation:

42 U.S.C. § 12203(a) (prohibiting discrimination (i.e. retaliation) because an individual "has opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA); 42 U.S.C. § 2000e-3(a) (prohibiting discrimination (i.e. retaliation) because an employee or applicant "has opposed any practice made an unlawful employment practice by" Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII); Neb. Rev. Stat. § 48-1114(1) (it is unlawful for an employer to discriminate (i.e. retaliate) against an employee because she has "opposed any practice made an unlawful employment practice by the [NFEPA]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [NFEPA]….").

Hill v. Life Line Screening of Am., LLC, No. 8:21CV161, 2021 WL 4400300, at *6 (D. Neb. Sept. 27, 2021). Section § 1981 prohibits retaliation as well. See CBOCS West, Inc v. Humphries, 553 U.S. 442 (2008).

To establish a prima facie case of retaliation under these acts, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." Blackwell v. Alliant Techsystems, Inc., 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation omitted) (Title VII retaliation); Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 924

(8th Cir. 2018) (ADA); *Knapp v. Ruser*, 901 N.W.2d 31, 48 (Neb. 2017) (NFEPA); *Warren v. Kemp,* 79 F.4th 967 (8th Cir. 2023) (§ 1981).

(a) ADA Retaliation by Association

Simonsen's ADA retaliation claim arises under 42 U.S.C. § 12203. This statute prohibits retaliation against an individual who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" based on an alleged ADA violation. 42 U.S.C. § 12203. *Harms v. City of N. Platte,* No. 8:17CV301, 2017 WL 6501848, at *1 (D. Neb. Dec. 19, 2017)

To make out a retaliation claim a plaintiff must show "(1) that [s]he engaged in statutorily protected activity, (2) that an adverse action was taken against [her], and (3) a causal connection between the adverse action and the protected activity." *Hill v. Walker,* 737 F.3d 1209, 1218 (8th Cir. 2013). An employee engages in protected activity when she opposes an action "based on a reasonable belief that [her] employer has engaged in discriminatory conduct, ... and it can include refusal to implement a discriminatory policy." *Foster v. Time Warner Ent. Co., L.P.,* 250 F.3d 1189, 1194 (8th Cir. 2001) (citing *EEOC v. HBE Corp.,* 135 F.3d 543, 554 (8th Cir. 1998)). The plaintiff "need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law. *Id.*

The plaintiff has alleged she opposed the school's failure to fully implement the IEP plans for disabled students, that she was suspended, and the school did not recall her to teach under her teaching contracts. She also alleges her continued suspension was in response to the testimony she gave in another lawsuit, as well as the EEOC and NEOC charges she filed.

21

The defendants argue that telling the administrators and teachers that she would report violations of the law regarding failure to deliver mandatory educational services was merely hypothetical. However, the facts can't be viewed in a vacuum. This teacher had, on multiple occasions, complained to administrators and state agencies, and been deposed in a lawsuit related to these very charges. The facts alleged imply Simonsen was not speaking solely hypothetically.

The defendants also argue that the time between the deposition and the suspension too long to be considered a causal connection for purposes of a retaliation claim.[3] However, there are intervening circumstances here. Indeed, there was a nine-month span between the deposition and the suspension, however the suspension allegedly occurred on the same day the Mohnsen action was dismissed, raising at least a plausible argument that the suspension was related to Simonsen's alleged protected activity.

The Court takes into consideration the temporal connection between the alleged protected activity and the adverse action. In this case, the deposition was months prior to the suspension. Taken together, Simonsen's allegations that she opposed how the IEPs were implemented, her admonitions to the administrators and others at WPS that she would continue to speak out against unlawful behavior, her suspension closely following these admonitions, and the timing of her suspension relative to the settlement of the Mohnsen

---

[3] Simonsen argues "defendants' allegation that there was a nine (9) month span between Plaintiff's deposition and the August 2021 suspension is inaccurate" because teaching contracts typically span the months from August to May. Filing 28 at 8. This argument was made to demonstrate a close temporal connection between the deposition and the suspension. Frankly, this is not how time is calculated. There <u>was</u> a nine-month span between the deposition and the suspension.

action support a finding that she has stated a plausible retaliation claim under the ADA.

(b) Rehabilitation Act Retaliation by Association

The plaintiff alleged in Count IV that WPS retaliated against her after she engaged in protected activities and/or due to her close association with disabled students, in violation of Section 504 of the Rehabilitation Act of 1973.

Section 504 provides that no individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" that receives federal funding. 29 U.S.C. § 794(a). To make out a case of retaliation under § 504, Simonsen must show she was engaged in protected activity, the defendants took some adverse action, and a causal connection between the activity and the defendants' action. *Bradley ex rel. Bradley v. Arkansas Dep't of Educ.*, 443 F.3d 965, 976 (8th Cir. 2006), See *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363-64 (8th Cir.2003) (citing cases).

Under the Rehabilitation Act, "to be engaged in a protected activity," Simonsen "must have been protesting what [she] perceived as discriminatory" action taken by the School District. *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir.2000). The plaintiff has alleged that she made complaints to administrators and to the Nebraska Department of Education regarding the defendants' failure to provide mandated education and services to special education students in 2017. She has not alleged a sufficient causal connection between these activities and her 2021 suspension to state a claim for retaliation under the Rehabilitation Act. However, as previously discussed, taking the facts and history into account, she has stated a plausible claim for retaliation regarding her deposition in that the timing of her suspension could be linked to the settlement of the Mohnsen case, and she has stated a plausible

23

claim that her continued suspension was in retaliation for her NEOC and EEOC filings.

### (c) Title VII Retaliation Based on Association

A prima facie case of retaliation under Title VII requires a plaintiff to show: "(1) that [she] engaged in statutorily protected activity; (2) [that she suffered] an adverse employment action; and (3) a causal connection [existed] between the adverse employment action and the protected activity." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182-83 (8th Cir. 1998); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995). An employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a).

The first step is determining whether Simonsen engaged in a protected activity, *i.e.*, whether she opposed an unlawful employment practice. *Artis*, 161 F.3d at 1183. Simonsen complained to supervisors, the school board, and others about the school's policies and actions toward the Native American students. However, the Eighth Circuit has found that "opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII." *Id.* at 1183 (citing *Evans*, 65 F.3d at 101*)* (finding no Title VII violation where employee complained of school's responsibility to its students, which is not a complaint based on an employment practice); *see also Warren v. Kemp,* 79 F.4th 967 (8th Cir. 2023) (finding no violation of Title VII where the conduct alleged had nothing to do with "compensation, terms, conditions, [sic], or privileges of employment.").

The retaliation provision in the statute forbids an employer to retaliate against an employee because she "has opposed any practice made an unlawful employment practice" under Title VII. See 42 U.S.C. § 2000e-3(a). It follows

24

that if Simonsen has not alleged an unlawful employment practice under Title VII, that she cannot state a claim for retaliation under Title VII either. Accordingly, the Title VII retaliation claim in Count VI will be dismissed.

### (d) NFEPA - Protected Activity

In addition to her claims for retaliation or discrimination because of her association with disabled and Native American students, Simonsen claims WPS retaliated against her in violation of the NFEPA because she engaged in protected activities (Count VIII).

The NFEPA makes it unlawful for an employer to discriminate based on "race, color, religion, sex, disability, marital status, or national origin" or because an employee "opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state." Neb. Rev. Stat. §§ 48-1104 and 48-1114. A retaliation claim under NFEPA is governed by the same standard as a claim for retaliation under 42 U.S.C. § 1981 or Title VII. *Garagiola v. Saunders Cnty., Neb.*, no. 4:17-cr-3077, 2018 WL 10152551, at *3 (D. Neb. Jan. 29, 2018).

The Nebraska Supreme Court has emphasized that NFEPA is not a "general bad acts" statute. In other words, the NFEPA's "purpose is not served by giving an extra layer of protection from discharge to those employees who happen to voice their opposition to any manner of unlawful activity" that is unrelated to employment. *Baker-Heser v. State*, 963 N.W.2d 59, 69 (Neb. 2021). Rather, it is to protect against the "exploitation of an employer's power over an employee when used to coerce the employee to endorse through participation or acquiescence, the unlawful acts of the employer." *Id.* The practices opposed "must be unlawful practices of the employer . . . and not unlawful actions by individuals or coemployees." *Walker v. First Care Mgmt. Grp., LLC*, 27 F.4th

25

600, 604 (8th Cir. 2022) (citing *Bonn v. City of Omaha*, 814 N.W.2d 114, 121 (Neb. Ct. App. 2012)).

The defendants argue that Simonsen has not alleged that she opposed any unlawful <u>employment</u> practices, so her claims are not the type of claims that the NFEPA is intended to address. However, under Neb. Rev. Stat. § 48-1114(1)(c), the act provides protection for opposition to an employer's unlawful practices, including when an employee "has opposed any practice or refused to carry out any practice unlawful under federal law or the laws of this state."

Simonsen alleges she engaged in protected activity by speaking out - in a deposition, to her superiors, and to her peers - regarding the school's alleged failure to provide the government-mandated educational services to disabled and Native American students, and the school's alleged illegal retaliation against a third-party. Simonsen sets out a number of specific allegations, including that WPS and the school failed to provide appropriate services required by law to special needs students, allowed improperly licensed or credentialed staff to provide mandatory services to special needs students, failed to properly document and record services allegedly provided, and failed to provide reasonable accommodation for special needs students. She alleges that as a result of her opposition to the school's policies, she was suspended from her teaching position pending an investigation, and even when the investigation concluded, she was not recalled to teach despite being under contract. She also alleges there is a causal connection between protected activity and her suspension, as the suspension was initiated on the same day Mohnsen's lawsuit was settled, meaning Simonsen would no longer be a possible witness at a trial.

The plaintiff has sufficiently alleged a claim for retaliation under the NFEPA. The motion to dismiss will be denied as to the count VIII of Simonsen's complaint.

(e) 42 U.S.C. 1981 Retaliation

In pertinent part, section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 1981(a). The language, "make and enforce contracts," includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). Section 1981's purpose is to "prohibit discrimination in the 'performance, modification and termination of contracts' and to protect 'the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *See Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002) (quoting § 1981(b)).

A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983. *Artis* at 1181. The defendants argue Simonsen's 1981 claims against the school district and against Ahrends in his official capacity must be dismissed for failure to state a claim. The plaintiff "admits this pleading failure and respectfully requests leave to add the § 1981 claims raised in Counts V-VII were brought pursuant to § 1983." Filing 28 at 22-3.

The Court will liberally construe the § 1981 claims against WPS and Ahrends in his official capacity as claims brought under § 1983. See *Lockridge*. The Supreme Court has said that to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

27

In *Humphries v. CBOCS West, Inc.*, [474 F.3d 387, 403 (7th Cir. 2007)], the Seventh Circuit ruled that a plaintiff could assert a § 1981 retaliation claim if the plaintiff was discriminated against for complaining about the discrimination of others. [] Furthermore, several courts have recognized a § 1981 retaliation claim when a white plaintiff is retaliated against for complaining about or objecting to racial discrimination of a minority third person. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004); *MacIntosh v. Bldg. Owners & Managers Ass'n Intern.*, 355 F. Supp. 2d 223, 226 (D.D.C. 2005), *rev'd in part on other grounds by* 378 F.3d 756 (8th Cir. 2004); *Farmer v. Lowe's Cos., Inc.*, 188 F. Supp. 2d, 612, 618 (W.D.N.C. 2001); *Hagemann v. Molinari*, 14 F. Supp. 2d 277, 286 (E.D.N.Y. 1998). Additionally, a white plaintiff can assert a claim under § 1981 if the plaintiff is harassed for associating with a racial minority.

*Carlton v. Union Pac. R. Co.*, No. 8:05-CV-293, 2007 WL 475350, at *1 (D. Neb. Feb. 9, 2007). In *Carlton,* the Court concluded that the plaintiff had asserted a cognizable § 1981 claim for retaliation based upon his association with a co-worker of another race. *See id.*

Necessary for a § 1981 prima facie case of discrimination are factual allegations showing, or giving rise to an inference, of an intent to discriminate on the basis of race. *See Nelson v. USAble Mutual Ins. Co.*, 918 F.3d 990, 993 (8th Cir. 2019). There are no allegations that Simonsen was discriminated against on the basis of her race or ethnicity, or because her race was different than the students she advocated for. However, she has pled sufficient facts to plausibly allege that her suspension was in retaliation for complaints of race-based discrimination she made on behalf of the Native American students. She

28

has alleged the complaints to the administration and others were the cause for the suspension. She also alleges her continued complaints and NEOC/EEOC charges were the cause for the continuation of her suspension in subsequent school years, despite having a contract to continue teaching at WPS. She has plausibly alleged that the racial discrimination and her resulting complaints caused interference with her contract(s) to teach at WPS. The motion to dismiss Simonsen's § 1981 claims in Counts VI and VII on the basis that they were not raised under § 1983 will be denied.[4]

### 6. OFFICIAL CAPACITY CLAIMS

The First Amended Complaint alleges that at all times, Defendant Ahrends was acting in his official and individual capacities and within the scope and course of his employment with WPS. A suit against a public employee in his or her official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).* "Capacity to sue or be sued is determined ... for all other parties [other than individuals or corporations], by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under Nebraska law, any government entity may be sued in its own name if it is an independent political subdivision. Neb. Rev. Stat. § 13-903. Political subdivisions include "villages, cities of all classes, counties, school districts, learning communities, public power districts, and all other units of local government." *Id.* A political subdivision is characterized by "a governing body with the power and authority to appropriate funds and make

---

[4] The defendants make no argument with regard to the § 1981 individual capacity claim against Ahrends in Count VII, therefore the court does not address it in relation to this motion.

expenditures." *See Meyer v. Lincoln Police Dept., 347 F. Supp. 2d 706, 707 (D. Neb. 2004)*.

In Counts I and II, Simonsen alleges Defendant Ahrends violated Simonsen's right to free speech and her right to associate through the First Amendment, as raised through § 1983. The plaintiff's § 1983 claims against Ahrends in his official capacity are interpreted as claims against WPS. *See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010)*. The defendants' brief is silent as to the official capacity claims against Ahrends in Counts I, II, and VII. As previously discussed, Count II will be dismissed for failure to state a claim upon which relief can be granted. The plaintiff has sufficiently alleged a claim in Count I and Count VII against Ahrends in his individual capacity, and the defendants have not moved for dismissal of Count I or VII in Defendant Ahrends' official capacity; accordingly these claims will proceed against Ahrends in his official capacity. And the Court construes Count VII as bringing the official capacity claim against Ahrends under 42 U.S.C. § 1981, as raised through 42 U.S.C. § 1983. *See* filing 28 at 23.

The court notes that the defendants' motion to dismiss requests dismissal of the official capacity claims as alleged in Counts IV and V. However, neither of these claims was alleged against Defendant Ahrends in either his individual or his official capacity.

### 7. MOTION TO AMEND

The plaintiff requested leave to amend the complaint to eliminate Count III of the first amended complaint, to correct typos, delete some language, add limited relevant facts. She also wished to add § 1983 claims in Count V-VII against the school district "for its policies that caused the constitutional torts suffered by Simonsen." Filing 28 at 23. However, Simonsen has filed a motion stating that she has filed a new lawsuit against the defendants alleging the

claims she sought to add to this action.[5] She requests the motion to file a second amended complaint be withdrawn or deemed moot. Filing 35. Therefore,

IT IS ORDERED:

1.  Defendant's Motion to Dismiss (filing 24) is granted in part and denied in part as follows:

    a.  Defendants' motion to dismiss Simonsen's § 1983 claim with respect to the alleged free speech violation of the First Amendment is denied. Count I remains as to Ahrends in his individual and official capacities.

    b.  Counts II, III, and V are dismissed in their entirety.

    c.  Count VI is dismissed as to the Title VII claim.

    d.  Count VII is dismissed as to the discrimination claim and Defendant's Motion to Dismiss is denied as to the retaliation claim.

2.  Simonsen's motion to withdraw (filing 35) is granted.

3.  Simonsen's motion to amend the complaint (filing 30) is withdrawn.

---

[5] The plaintiff explains that the second lawsuit was filed because the Right to Sue on the September 2023 NEOC and EEOC filings was nearing expiration.

31

4.      This matter is referred to the Magistrate Judge for case progression.

Dated this 23rd day of April, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge